IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CHAPTER 11 |
| ZPOWER TEXAS, LLC, AND | § | |
| ZPOWER, LLC, | § | CASE NO. 20-41157-11 |
| | § | |
| DEBTORS. | § | JOINTLY ADMINISTERED |

## DEBTORS' AMENDED JOINT PLAN OF LIQUIDATION

Davor Rukavina, Esq.
Texas Bar No. 24030781
Julian P. Vasek, Esq.
Texas Bar No. 24070790
**MUNSCH HARDT KOPF & HARR, P.C.**
3800 Ross Tower
500 N. Akard Street
Dallas, Texas  75202-2790
Telephone: (214) 855-7500
Facsimile: (214) 978-4375

**ATTORNEYS FOR THE DEBTORS-IN-POSSESSION**

**DATED: MARCH 5, 2021.**

ZPower, LLC and ZPower Texas, LLC (the "Debtors") hereby propose the following *Amended Plan of Liquidation* pursuant to the provisions of section 1121 of the Bankruptcy Code:

## ARTICLE I
## DEFINITIONS AND INTERPRETATION

1.1     Rules of Interpretation.

(i)     Unless otherwise specified, all Section, Article, and Exhibit references in this Plan are to the respective Section in, or Article of, this Plan, as the same may be amended, waived or modified from time to time. Words denoting the singular number shall include the plural number and *vice versa*. In construing this Plan, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply.

(ii)    In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006 shall apply.

(iii)   Where a creditor or holder of any right under this Plan is named by name, such naming shall include any successor-in-interest to any right of such creditor.

1.2     Definitions. Terms and phrases, whether capitalized or not, that are used and not defined in this Plan, but that are defined in the Bankruptcy Code, have the meanings ascribed to them in the Bankruptcy Code. Unless otherwise provided in this Plan, the following terms have the respective meanings set forth below, and such meanings shall be equally applicable to the singular and plural forms of the terms defined, unless the context otherwise requires.

"**Administrative Claim**" means a Claim for any cost or expense of administration of the Bankruptcy Case under section 503(b) of the Bankruptcy Code, including, without limitation, any fees or charges assessed against the Estate pursuant to 28 U.S.C. § 1930, and further including a Professional Claim, but excludes the Riot Energy Postpetition Debt. For the avoidance of doubt, Administrative Claims do not include Secured Tax Claims.

"**Administrative Claims Bar Date**" means the day that is thirty (30) days after the Effective Date.

"**Administrative Tax Claim**" means any *ad valorem* tax claim assessed against, or payable by, the Debtors or the Estates or their property for or on account of a period after the Petition Date, specifically excluding Secured Tax Claims.

"**Allowed**" as it relates to any type of Claim provided for under this Plan, but excluding a Professional Claim, means a Claim:

(i)     which has been scheduled as undisputed, noncontingent and liquidated in the Schedules in an amount other than zero or unknown, and as to which:
        a.   no proof of Claim has been timely filed; and
        b.   no objection has been timely filed (as determined by applicable deadlines contained in this Plan, including the Claims Objection Deadline);

(ii)    as to which a proof of Claim has been timely filed and either:

    a.  no objection thereto has been timely filed (as determined by applicable deadlines contained in this Plan, including the Claims Objection Deadline); or

    b.  such Claim has been allowed (but only to the extent allowed) by a Final Order of the Bankruptcy Court;

(iii)    which has been expressly allowed under the provisions of this Plan; or

(iv)    which has been expressly allowed by Final Order of the Bankruptcy Court.

"**Allowed Administrative Claim**" means: (i) an Administrative Claim that has been Allowed (but only to the extent Allowed), if approval from the Bankruptcy Court is required in order to Allow the same; or (ii) an Administrative Claim which: (a) is incurred by the Debtors after the Petition Date in the ordinary course of business operations or pursuant to an order entered by the Bankruptcy Court granting automatic Administrative Claim status; (b) is not disputed by the Debtors; and (c) does not require approval from the Bankruptcy Court to become Allowed.

"**Allowed Priority Claim**" means a Priority Claim that has been Allowed (but only to the extent Allowed).

"**Allowed Secured Claim**" means a Secured Claim that has been Allowed (but only to the extent Allowed).

"**Allowed Unsecured Claim**" means an Unsecured Claim that has been Allowed (but only to the extent Allowed).

"**Avoidance Actions**" means any and all rights, claims or actions which the Debtor may assert on behalf of the Estate under Chapter 5 of the Bankruptcy Code, including actions under one or more provisions of sections 328, 542, 544, 545, 546, 547, 548, 549, 550, 551 and/or 553 of the Bankruptcy Code.

"**Bankruptcy Case**" means jointly administered Bankruptcy Case No. 20-41157 in the Bankruptcy Court.

"**Bankruptcy Code**" means 11 U.S.C. §§ 101, *et. seq.*, in effect as of the Petition Date and as may have been or may be amended or supplemented since, to the extent that any such amendment or supplement is automatically applicable to the Bankruptcy Case by operation of law and not by operation of any election or choice.

"**Bankruptcy Court**" means the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division or, if such court ceases to exercise jurisdiction, the court or adjunct thereof that exercises jurisdiction over the Bankruptcy Case.

"**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure, together with the local bankruptcy rules for the Bankruptcy Court as now in effect or as the same may from time to time hereafter be amended.

"**Bar Date**" means August 13, 2020 for claims of persons other than Governmental Units, and 180 days after the Petition Date for claims of Governmental Units pursuant to Bankruptcy Rule 3002(c)(1).

"**Business Assets**" means all property and assets of the Debtors and the Estates, save and except for: (i) the Creditor Trust Assets; and (ii) Executory Contracts assumed by the Debtors prior to the Confirmation Hearing or under this Plan. For the avoidance of doubt, Business Assets includes all cash (except the Seed Money), accounts, accounts receivables, contract rights, general intangibles, patents, trademarks, inventory, work-in-process, finished goods, machinery, equipment, furniture, fixtures, tax rebates, intellectual property, copyrights, books and records, manuals, rights to employees, the Oticon Actions, breach of contract claims and causes of action arising after the Petition Date, and all other personal property of the Debtors and the Estates.

"**Business Day**" means any day which is not a Saturday, a Sunday, or a "legal holiday" within the meaning of Bankruptcy Rule 9006(a).

"**Causes of Action**" means any claim or cause of action of the Debtors or the Estates against any person, including on account of receivables, malpractice or professional negligence, theft, misappropriation, breach of fiduciary duty, overpayment, restitution, and any other claim or cause of action, including the Widex Actions, the D&O Actions, the D&O Insurance and the Avoidance Actions, but expressly excluding: (i) breach of contract or receivables arising after the Petition Date (except as to the Widex Actions) and (ii) any claim or cause of action against the Riot Energy Releasees.

"**Claim**" means a claim against one or more of the Debtors, the Estates, and/or property of the Debtors or the Estates, as such term is otherwise defined in section 101(5) of the Bankruptcy Code, and arising at any time prior to the Effective Date, including first arising after the Petition Date, regardless of whether the same would otherwise be a claim under said section 101(5) of the Bankruptcy Code.

"**Claims Objection Deadline**" means the date by which parties authorized by the Plan may file any objection to a Claim, which date shall be one-hundred and eighty (180) days after the Effective Date, except with respect to Administrative Claims as otherwise provided for herein and with respect to Disputed Claims.

"**Class**" means one of the categories of Claims and Equity Interests established under Article II of this Plan.

"**Confirmation Date**" means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on its docket.

"**Confirmation Hearing**" means the hearing(s) before the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code to consider confirmation of this Plan, as such hearing(s) may be continued, rescheduled or delayed.

"**Confirmation Order**" means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code, as such order may be amended, modified, or supplemented.

"**Creditor**" means the holder of any Claim entitled to distributions under this Plan with respect to such Claim.

"**Creditor Trust**" has the meaning assigned to it in section 5.3.1 of this Plan.

"**Creditor Trust Assets**" has the meaning assigned to it in section 5.3.4 of this Plan.

"**Creditor Trust Trustee**" has the meaning assigned to it in section 5.3.2 of this Plan.

"**Cure Claim**" means a Claim required to be paid under section 365 of the Bankruptcy Code in order to assume any Executory Contract, including, as may be applicable, any nonmonetary portion thereof.

"**D&O Actions**" means any and all claims and causes of action of the Debtors and the Estates, except and only to the extent otherwise expressly and specifically released in this Plan, for breach of fiduciary duty or breach of any other duty or contract against any past or present officer of the Debtors or member of any of the Debtors' boards of managers, or advisor to the same, or other fiduciary of the Debtors, including any claim for any damages, punitive damages, sanctions, and fees related to or resulting from the same, and further including any and all rights to any insurance policies and proceeds regarding the same and all insurance demands and related rights under all applicable law related to the same.

"**D&O Insurance Actions**" means any and all claims and causes of the Debtors and the Estates against any insurance company or carrier related to any prior, present, or future denial of coverage with respect to any aspects of the D&O Claims, including all rights under all applicable law with respect to the same, including for bad faith or improper denial of coverage, breach of contract, treble or other damages, fees, and all consumer or insured protection statutes.

"**Debtors**" mean ZPower, LLC and ZPower Texas, LLC.

"**Debtor Releasees**" means the Debtors and their members, shareholders, their current and former officers, directors, agents, employees, attorneys, other professionals, representatives, predecessors, successors and assigns, (including current and former officers and directors and pre-petition agents, attorneys and other professionals).

"**DIP Lender**" means Riot Energy, Inc. formerly known as Z Battery DIP Lenders, LLC.

"**DIP Order**" means that certain *Interim Order (I) Authorizing Post-Petition Secured Financing Pursuant to Sections 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(e) and 503(b) of the Bankruptcy Code; (II) Scheduling a Final Hearing* [Bankruptcy Case Docket No. 36] and any stipulation or order entered in the Bankruptcy Case extending such order.

"**Disallowed Claim**" means, as it relates to any type of Claim provided for under this Plan, except an Administrative Claim (or a Professional Claim), a Claim or portion thereof that:

(i)     has been disallowed by a Final Order of the Bankruptcy Court;

(ii)     is identified in the Schedules in an amount of zero dollars, unknown dollars, or as contingent, unliquidated, and/or disputed, and as to which a proof of Claim was not filed by the Bar Date; or

(iii)    is not identified in the Schedules and as to which no proof of Claim has been filed or deemed filed by the Bar Date, if the filing of such proof of Claim is otherwise required.

"**Disclosure Statement**" means the Disclosure Statement with respect to this Plan, approved by the Bankruptcy Court as containing adequate information for the purpose of dissemination and solicitation of votes on confirmation of this Plan, either in its present form or as it may be altered, amended or modified from time to time.

"**Effective Date**" means the first Business Day fourteen (14) days after the Confirmation Date if the Confirmation Order is not stayed or, if the Confirmation Order is stayed, the first Business Day following the lifting, dissolution, or removal of such stay which is at least fourteen (14) days after the Confirmation Date, and upon which the conditions to the effectiveness of the Plan set forth in Article IX hereof are satisfied.

"**Equity Interests**" means all stock or other securities evidencing any ownership of any equity interest of the Debtors.

"**Estates**" means the estates created for the Debtors pursuant to section 541 of the Bankruptcy Code and any other applicable provision thereof.

"**Executory Contract**" means, collectively, "executory contracts" and "unexpired leases" of the Debtor as of the Petition Date as such terms are used within section 365 of the Bankruptcy Code.

"**Final Decree**" means the final decree entered by the Bankruptcy Court on or after the Effective Date pursuant to Bankruptcy Rule 3022.

"**Final Order**" means a judgment, order, ruling, or other decree issued and entered by the Bankruptcy Court or by any state or other federal court or other tribunal having jurisdiction over the subject matter thereof which judgment, order, ruling, or other decree has not been reversed, stayed, modified, or amended and as to which:

(i)      the time to appeal or petition for review, rehearing or certiorari has expired and as to which no appeal or petition for review, rehearing or certiorari is pending; or

(ii)     any appeal or petition for review, rehearing or certiorari has been finally decided and no further appeal or petition for review, rehearing or certiorari can be taken or granted.

"**Governmental Unit**" means a governmental unit as such term is defined in section 101(27) of the Bankruptcy Code.

"**MidCap**" means MidCap Financial Trust.

"**Person**" means and includes natural persons, corporations, limited partnerships, general partnerships, joint ventures, trusts, land trusts, business trusts, unincorporated organizations, or other legal entities, irrespective of whether they are governments, agencies or political subdivisions thereof.

"**Petition Date**" means March 17, 2020.

"**Plan**" means this *Debtors' Amended Joint Plan of Liquidation*, either in its present form or as it may be altered, amended or modified from time to time.

"**Priority Claim**" means any Claim entitled to priority in payment under section 507(a) of the Bankruptcy Code, excluding any Claim that is an Administrative Claim or that is a Secured Tax Claim.

"**Pro Rata**" means proportionally based on one's portion of the whole, and not per capita.

"**Professional**" means any Person employed or to be compensated pursuant to sections 327, 328, 330, 331, 503(b), or 1103 of the Bankruptcy Code.

"**Professional Claim**" means a Claim by a Professional for compensation and/or reimbursement of expenses pursuant to sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code in connection with an application made to the Bankruptcy Court.

"**Purchase Price Amount**" means $4,300,000.00 of the Riot Energy Debt, including all the Riot Energy Postpetition Debt.

"**Rejection Damages Claim**" means the Claim in favor of a counterparty to an Executory Contract that is rejected by the Debtors, but that is not an Administrative Claim.

"**Rejection Damages Claim Bar Date**" means the day that is thirty (30) days after the Effective Date, if the Executory Contract giving rise to the Rejection Damages Claim is rejected under this Plan.

"**Riot Energy**" means Riot Energy, Inc. formerly known as Z Battery DIP Lenders, LLC.

"**Riot Energy APA**" means the Asset Purchase Agreement between the Debtors as Sellers and Riot Energy, Inc. f/k/a Z Battery DIP Lenders, LLC as Purchaser pursuant to which Riot Energy will acquire the Business Assets of the Debtors in exchange for certain of the Riot Debt, to be filed as a Supplement to this Plan.

"**Riot Energy Claims**" means all Claims arising from the Riot Energy Debt.

"**Riot Energy Debt**" means the Riot Energy Postpetition Debt and the Riot Energy Prepetition Secured Debt.

"**Riot Energy Postpetition Debt**" means all principal, interest and other amounts owed by the Debtors pursuant to the DIP Order. For the avoidance of doubt, "Riot Energy Postpetition Debt" includes all claims and rights to a superpriority Administrative Claim and to replacement liens and diminution liens.

"**Riot Energy Prepetition Secured Debt**" means (i) all principal, interest, fees and other amounts owed by the Debtors to Riot Energy, arising under the Senior Secured Credit Agreement, (ii) any amounts owed to or Claims held by Riot Energy arising under any order entered in the Bankruptcy Case relating to the Senior Secured Credit Agreement and (iii) all principal, interest, fees and other amounts owed by the Debtors to Riot Energy arising under the Promissory Note and Security Agreement, dated March 16, 2020, between ZPower Texas, LLC and Riot Energy.

"**Riot Energy Released Amount**" means all of the Riot Energy Debt, save and except for the Purchase Price Amount.

"**Riot Energy Releasees**" means Riot Energy, its members, shareholders, its current and former officers, directors, agents, employees, attorneys, other professionals, representatives, predecessors, successors and assigns, (including current and former officers and directors and pre-petition agents, attorneys and other professionals).

"**Schedules**" means the Schedules of Assets and Liabilities and the Statements of Financial Affairs filed by the Debtors with the clerk of the Bankruptcy Court pursuant to Bankruptcy Rule 1007, as they have been or may be amended or supplemented from time to time in accordance with Bankruptcy Rule 1009.

"**Secured Claim**" means a Claim that is alleged to be secured, in whole or in part, (i) by a lien against an asset of the Debtors or the Estates; or (ii) as a result of rights of setoff under section 553 of the Bankruptcy Code.

"**Secured Tax Claim**" means a Claim of a Governmental Unit for the payment of *ad valorem* real property and business personal property taxes that is secured by property of the Debtors or the Estates arising prior to the Petition Date.

"**Senior Secured Credit Agreement**" means the Amended and Restated Credit and Security Agreement, dated as of July 15, 2019, as amended by that certain First Amendment to Amended and Restated Credit and Security Agreement, dated as of October 3, 2019, among ZPower, LLC, as Borrower, MidCap, as a Lender and as Agent, and the other lenders from time to time party thereto (as the same may have been and may be further amended, supplemented, restated or otherwise modified from time to time, the "Credit Agreement"), and all promissory notes, loan documents, collateral instruments, UCC financing agreements, pledge agreements, and all other contracts, agreements, documents, and instruments referenced in, evidencing or in any way related to the Credit Agreement.

"**Subordinated Claims**" means all Claims that are equitably subordinated under section 510 of the Bankruptcy Code as evidenced by a Final Order of the Bankruptcy Court, or by a Claimant filing in the Bankruptcy Court a voluntary designation to be treated as a Class 5 Claimant.

"**Substantial Consummation**" means the date on which any of the following first happens: (i) the Plan Funding is made; or (ii) the Bankruptcy Court otherwise finds that substantial consummation within the meaning and operation of the Bankruptcy Code has occurred.

**"Unsecured Claim"** means any alleged Claim against the Debtor that is not secured by (or to the extent not secured by) a valid, enforceable, and unavoidable lien against any asset of the Debtor or the Estate, including any deficiency claim, which does not enjoy any administrative or priority status under the Bankruptcy Code.

**"Voting Deadline"** means the period established by the Bankruptcy Court within which Ballots may be cast on the Plan.

**"Widex Actions"** means any and all claims and causes of action of the Debtors and the Estates against Widex, a Danish Company, and against Widex USA, Inc., and against any affiliate of any of the foregoing, existing as of the Petition Date or arising thereafter, including for unpaid accounts receivable, for breach of contract, for anticipatory breach or repudiation of contract, for violations of the automatic stay, and for contempt of court, including for all damages, punitive damages, sanctions, and fees assertible against or in connection with the same, including as asserted by the Debtors in Adversary Proceeding No. 20-04026 pending in the Bankruptcy Court.

**"ZPower"** means ZPower, LLC, a Delaware limited liability company and the Debtor in Case No. 20-41158-11.

**"ZPower Texas"** means ZPower Texas, LLC, a Texas limited liability company, wholly owned subsidiary of ZPower, and the Debtor in Case No. 20-41157-11.

## ARTICLE II.
## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

2.1     <u>Classification Generally</u>.  All Claims and Equity Interests, except Administrative Claims, are placed in Classes under the Plan.  A Claim is classified within a Class only to the extent that the Claim qualifies under the description of that Class.  A Claim which is properly includible in more than one Class is only entitled to inclusion within a particular Class to the extent that it qualifies under the description of such Class, and shall be included within a different Class(es) to the extent that it qualifies under the description of such different Class(es).

2.2     <u>DIP Claim</u>.  With respect to the Claim arising from the Riot Energy Postpetition Debt only, while otherwise an Administrative Claim, it is classified under this Plan and, notwithstanding anything contained herein to the contrary, shall not be treated as an Administrative Claim, but shall be treated under Class 3 only.

2.3     <u>Unclassified Claims</u>.  The following types of Claims (except the Riot Energy Postpetition Claim) are not classified under the Plan:

Administrative Claims
Administrative Tax Claims

2.4 <u>Classified Claims and Interests</u>. Claims and Equity Interests are classified under this Plan as follows:

| | |
|---|---|
| Class 1: | Priority Claims |
| Class 2: | Secured Tax Claims |
| Class 3: | Riot Energy Claims |
| Class 4: | Unsecured Claims |
| Class 5: | Subordinated Claims |
| Class 6: | Equity Interests |

## ARTICLE III.
## PROVISIONS FOR THE TREATMENT OF UNCLASSIFIED CLAIMS

3.1 <u>Administrative Claim Applications and Deadline</u>. Holders of Administrative Claims, including Professional Claims, other than: (a) Allowed Administrative Claims as of the Effective Date; (b) Administrative Claims that represent liabilities incurred on or after the Petition Date, but prior to the Effective Date, in the ordinary course of the Debtors' business which may be paid in the ordinary course of the Debtors' business without order of the Bankruptcy Court; and (c) Administrative Claims that constitute fees or charges assessed against the Estate under Chapter 123, Title 28, United States Code, must by no later than the Administrative Claims Bar Date: (x) file an application with the Bankruptcy Court for allowance of the Administrative Claim; and (y) serve a copy of such application on counsel for the Debtors, Riot Energy, the United States Trustee, and all other parties otherwise entitled to notice thereof. Failure to file and serve such application by the Administrative Claims Bar Date shall result in the Administrative Claim being forever barred and discharged as against the Debtors, their Estates, and Riot Energy, and the property of any of the foregoing including property transferred pursuant to the Plan. Except as specifically provided in this Plan, nothing in this Plan alters the law applicable to, and governing, the allowance of Administrative Claims (including Professional Claims) under the Bankruptcy Code.

3.2 <u>Treatment of Allowed Administrative Claims</u>. Except with respect to Administrative Tax Claims (see Section 3.4 below), and unless previously paid, each holder of an Allowed Administrative Claim, including a Professional Claim, shall be paid in full satisfaction, release and discharge of, and in exchange for such Allowed Administrative Claim, the amount of such Allowed Administrative Claim by Riot Energy, in cash, and without interest, attorney's fees (except as Allowed by the Bankruptcy Court), or costs, no later than ten (10) Business Days after the Effective Date, provided that any Allowed Administrative Expense that is incurred by the Debtors after the Petition Date in the ordinary course of business operations and that is unpaid as of the Effective Date shall be assumed and paid by Riot Energy in accordance with the business terms that exist between the Debtor and such claimant and as set forth in the Riot Energy APA.

3.3 <u>Treatment of Professional Claims</u>. Professional Claims become Allowed the same as Administrative Claims in this Article (Section 3.1), and are treated the same as Administrative Claims in this Article (Section 3.2), except that: (i) a Professional Claim that has been previously Allowed on a final (not interim) basis by Final Order of the Bankruptcy Court is not subject to the requirement for filing an application as provided for in Section 3.1; (ii) a Professional Claim that has been Allowed on an interim basis (not final) in whole or in part shall, with respect to being

Allowed on a final basis, be subject to the filing of an application for its allowance as provided for in Section 3.1 and shall be subject to such law, rules, and procedures as would be otherwise applicable to the same outside of this Plan; (iii) a Professional Claim that has been previously Allowed and paid on a final basis by Final Order of the Bankruptcy Court, but subject to disgorgement in the event of administrative insolvency, shall cease being subject to said disgorgement ten (10) days after the Administrative Claims Bar Date unless, upon motion and notice, the Bankruptcy Court extends such period; (iv) any interim payments on account of a Professional Claim shall be credited against the payment of the final Allowed amount of such Professional Claim; (v) any retainer provided on account of a Professional Claim may be credited and applied against the payment of the final Allowed amount of such Professional Claim once such Professional Claim is Allowed on a final basis; and (vi) any Professional Claim based on payment under section 328 of the Bankruptcy Code by commission or contingency shall be allowed and paid as provided for in the retention order of the Bankruptcy Code, without need for the filing of any application or other document with the Bankruptcy Court notwithstanding anything contained herein to the contrary.

3.4     <u>Administrative Tax Claims</u>.  Administrative Tax Claims, and any liens securing the same, are not affected by, prejudiced by, discharged by, or treated by this Plan, and shall survive this Plan without need for any action on the part of the holder thereof.  Administrative Tax Claims, and the liens securing the same, shall be paid when and as otherwise appropriate, together with such interest and other charges as otherwise appropriate, as soon as possible after the Effective Date or when the same otherwise become due and payable, by Riot Energy as provided in the Riot Energy APA.  Notwithstanding anything contained in this Plan to the contrary, nothing in this Plan transfers or vests any property of the Debtors or the Estates free and clear of any lien securing an Administrative Tax Claim.  All rights to contest any Administrative Tax Claim, including as may be appropriate under section 505 of the Bankruptcy Code, are preserved and vest in Riot Energy as of the Effective Date.

3.5     <u>Section 505</u>.  For the avoidance of doubt, and without limiting the generality of any similar provision of this Plan, the Debtors and the Estates reserve all rights under section 505 of the Bankruptcy Code, as otherwise applicable, to contest any tax Claim and to seek appropriate determinations under said section 505 with respect thereto, and transfer the same hereunder to Riot Energy.

## ARTICLE IV.
## PROVISIONS FOR THE TREATMENT OF CLASSIFIED CLAIMS

4.1     <u>Class 1:  Priority Claims</u>.  In full and final satisfaction, release, and exchange of each Priority Claim, each Priority Claim, to the extent Allowed, shall be paid by Riot Energy, but only to the extent Allowed, over a period of one (1) year, without interest, through twelve (12) equal consecutive monthly payments, commencing on June 1, 2021; *provided, however,* that any Priority Claim that is a Claim for taxes shall bear and be paid interest at the applicable non-bankruptcy rate as otherwise provided by law for all periods (including prior to and after the Petition Date) until paid in full.  Class 1 is impaired under this Plan.

4.2     <u>Class 2:  Secured Tax Claims</u>.  Any Secured Tax Claim, to the extent allowed, shall be assumed and paid by Riot Energy, as set forth in the Riot Energy APA, over a period of three (3) years, with interest at the applicable non-bankruptcy, non-default rate, through thirty-six (36)

equal consecutive monthly payments of principal and interest, commencing on June 1, 2021. Notwithstanding anything contained to the contrary in this Plan, each holder of a Secured Tax Claim shall retain all liens and security interests securing the same as against Riot Energy with respect to the Business Assets, but not as against any property transferred to the Creditor Trust under this Plan, and subject to all defenses thereto. Class 2 is impaired under this Plan.

4.3     Class 3:  Riot Energy Claims.  The Riot Energy Claims shall be Allowed in the amount of $21,187,503.00.  On the Effective Date the Purchase Price Amount shall be exchanged for the Business Assets in accordance with the terms of the Riot Energy APA.  The Riot Energy Released Amount shall be satisfied and released in accordance with the Riot Energy Release Agreement and Riot Energy shall receive nothing further on account of the Riot Energy Claims. Class 3 is impaired under this Plan.

4.4     Class 4: Unsecured Claims.  Nothing in this Plan Allows any Unsecured Claim.  In full and final satisfaction, release, and exchange of each Unsecured Claim, each Unsecured Claim, to the extent Allowed, shall receive a pro-rata share of any distributions or payments made by the Creditor Trust pursuant to the provisions of section 5.3 of this Plan.  Class 4 is impaired under this Plan.

4.5     Class 5: Subordinated Claims.  Nothing in this Plan Allows any Subordinated Claim.  To extent of any such Claim, such Allowed Subordinated Claim shall receive and retain nothing under this Plan.  Class 5 is deemed to reject this Plan.

4.6     Class 6: Existing Equity Interests.  Holders of any Equity Interest in the Debtors prior to the Effective Date shall receive or retain nothing under this Plan, and all such Equity Interests shall be cancelled.  Class 6 is deemed to reject this Plan.

## ARTICLE V.
## MEANS FOR IMPLEMENTATION OF THE PLAN

5.1     Sale of Assets and Assumption of Liabilities.  Pursuant to Section 1123(a)(5)(D) of the Bankruptcy Code, in exchange for the Purchase Price Amount, Riot Energy shall (i) acquire the Business Assets free and clear of all liens, claims, interests, and encumbrances unless otherwise provided herein or in the Riot Energy APA and (ii) assume certain liabilities of the Debtors and the Estates all as more particularly set forth in the Riot Energy APA.  All assumed liabilities shall remain subject to all of the Debtors', the Estates' and Riot Energy's  defenses thereto.

5.2     Riot Energy Release Agreement with Debtors.  On the Effective Date, the Debtor Releasees and the Riot Energy Releasees shall release each other from all claims, potential claims, suits, debts, liens, contracts, agreements, promises, liabilities, demands, rights, costs, expenses, actions, causes of action, and damages of every kind and nature whatsoever, whether known or unknown, suspected or unsuspected, fixed or contingent, which any releasor has or may have, or which have been asserted or could be asserted in the future, that are based upon, arise out of, or in any way relate to the Debtors or their business or operations (including any claims under Chapter 5 of the Bankruptcy Code or similar State or Federal law); provided, however, that the foregoing shall not release, affect, or prejudice any D&O Actions or D&O Insurance Actions that arose prior

to, and existed as of, the Petition Date, all of which are otherwise transferred to the Creditor Trust as provided below.

5.3     Creditor Trust.  The Plan creates a creditor trust for the benefit of Class 4 Creditors as follows:

5.3.1     Creation.  On the Effective Date, and without need for further order, action, or document, the "ZP Creditor Trust" (the "Creditor Trust") shall be created.  The Creditor Trust shall be a grantor trust under federal law and shall not have any liability to pay any income tax.

5.3.2     Trustee.  The Creditor Trust shall be solely and fully administered by Joseph Sullivan (the "Creditor Trust Trustee"), subject to resignation and replacement as otherwise provided for in the Creditor Trust Documents.  The Trustee shall have the fiduciary duties of a trustee to the Creditor Trust.  Among other rights, duties, and powers, the Creditor Trust Trustee shall have the right, standing,  and ability to: (i) liquidate and monetize all Creditor Trust Assets; (ii) sue in the name of the Creditor Trust and prosecute and recover for the Creditor Trust Causes of Action otherwise transferred to the Creditor Trust under this Plan; (iii) otherwise manage the Creditor Trust Assets ; (iv) object to any Claim that attaches to the Creditor Trust and is to be paid under the Creditor Trust; (v) purchase insurance for the Creditor Trust and its fiduciaries; (vi) invest any property of the Creditor Trust; and (vii) otherwise represent the Creditor Trust in any and all matters affecting the Creditor Trust.  The Creditor Trust Trustee shall have the same liabilities to the Creditor Trust and its beneficiaries as would a Chapter 7 trustee under the Bankruptcy Code and shall have the same protections afforded such a trustee.

5.3.3.     Compensation.     The Creditor Trust Trustee shall be entitled to compensation of up to $400 per hour, and the reimbursement of reasonable expenses, subject to adjustment and other provisions provided for in the Creditor Trust Documents.

5.3.4     Vesting of Assets.  On and after the Effective Date, the Creditor Trust shall be vested with the following assets, free and clear of all liens, claims, interests, and encumbrances (the "Creditor Trust Assets"):

(i)     the Causes of Action (including the Widex Actions, D&O Actions, Avoidance Actions, and D&O Insurance Actions); and

(ii)     $50,000.00 in cash from the Debtors that is otherwise Riot Energy's cash collateral (the "Seed Money").

5.3.5     Beneficiaries.  The beneficiaries of the Creditor Trust shall be holders of Allowed Class 4 Claims, pro-rata.

5.3.6     Governance.  All governance and other matters regarding the Creditor Trust shall be provided for in the ZP Creditor Trust Agreement (the "Creditor Trust Agreement"), to be filed as a Supplement to this Plan, which shall also contain a deadline for the Creditor Trust to terminate, subject to requests to extend the same.

5.3.7    Committee.  Up to the largest three (3) holders of Class 4 Claims, willing to serve, shall be entitled to sit on the ZP Creditor Trust Committee, and shall have all rights provided for in the Creditor Trust Agreement, including to manage and remove the Creditor Trust Trustee.  No action may be brought against any member thereof, and no member thereof shall have any liability for any action or inaction, except for those torts intended to inflict willful and malicious injury.  No member thereof shall be entitled to any compensation for his services.

5.3.8    Distributions.  The Creditor Trust shall make distributions, from time to time, pro-rata to holders of Allowed Class 4 Claims, from the Creditor Trust Assets, to be determined by the Creditor Trust Trustee and as provided for in the Creditor Trust Agreement.

5.3.9    Bankruptcy Court Jurisdiction.    The Bankruptcy Court shall have jurisdiction over all matters regarding the management of the Creditor Trust and over the Creditor Trust Trustee, and over such other matters affecting the Creditor Trust and the liquidation of the Creditor Trust Assets as is otherwise appropriate and as is provided for in this Plan, to the maximum extent possible.  The Bankruptcy Court shall likewise have continuing jurisdiction to provide guidance, control, and oversight of the Creditor Trust and the Creditor Trust Trustee, and the Creditor Trust Trustee shall have the ability, from time to time, to seek such guidance, control, oversight, and orders from the Bankruptcy Court regarding the Creditor Trust and its administration as is otherwise appropriate.

5.4    Vesting of Assets.  All property and assets of the Estates transferred to and vested in Riot Energy and/or the Creditor Trust under this Plan shall be transferred free and clear of all liens, claims, interests, and encumbrances, except only for those liens, claims, interests, and encumbrances expressly and explicitly preserved or created under this Plan.

5.5    Executory Contracts.  Any Executory Contract not listed on Schedule "A" hereto shall be deemed rejected as of the Effective Date unless such Executory Contract was previously rejected by operation of law or pursuant to an Order of this Court in which case such Executory Contract shall be deemed rejected effective as of the date specified in any prior order or as provided by law.  Any Executory Contract listed on Schedule "A" hereto shall be assumed and assigned as of the Effective Date to Riot Energy as part of the Business Assets, with any resulting Cure Claim to be paid for such assumption set and judicially determined at the amount listed on Schedule "A".  Any such Cure Claim shall be assumed and paid by Riot Energy.  Any Rejection Damages Claim shall be a Class 4 Claim and treated as such under this Plan.

5.6    Automatic Stay.  The automatic stay provided by section 362(a) of the Bankruptcy Code shall remain in effect through to the Effective Date, unless otherwise specifically modified, annulled, or terminated by the Bankruptcy Court pursuant to separate order, and shall terminate on the Effective Date, at which time the discharge and injunction provisions of this Plan and the Bankruptcy Code shall control.

5.7    Rights Under Section 505.  All Secured or Priority Claims for taxes by Governmental Units and any claim to a refund regarding the same or other relief regarding the same shall remain subject to section 505 of the Bankruptcy Code and shall be assumed by and vest

in Riot Energy. Riot Energy may seek relief pursuant to section 505 of the Bankruptcy Code as a part of, and in conjunction with, any objection to any claim for taxes by a Governmental Unit.

5.8    Substantive Consolidation. On the Effective Date, and without need for further action, order, or document, the Debtors and their Estates shall be substantively consolidated for purposes of distribution under this Plan.

5.9    Corporate Existence of Debtors. After the Effective Date and during the existence of the Creditor Trust, the Creditor Trust Trustee shall take such steps under applicable nonbankruptcy law to wind down the affairs, dissolve, and to terminate the corporate existence of the Debtors, with this Plan satisfying all applicable nonbankruptcy law regarding the same, including all notice and other liquidation and wind down provisions and procedures; provided, however, that during the existence of the Creditor Trust, the Creditor Trust Trustee shall have the exclusive authority to file Debtor's tax returns, and issue final tax documents, including K-1s, as appropriate under applicable nonbankruptcy law evidencing the foregoing.

5.10   Management of the Debtors After Confirmation. The Creditor Trust Trustee shall manage the Debtors after the Effective Date solely for the purpose of ensuring and effectuating their winding down, dissolution, termination, and filing and issuance of final tax returns and documents.

5.11   Plan Supplements. Any supplement contemplated by this Plan shall, when filed with the Bankruptcy Court, automatically become part of the Plan.

5.12   Incorporation of Exhibits. Any exhibits to this Plan, or any supplements to this Plan filed prior to the conclusion of the Confirmation Hearing, shall automatically become part of this Plan if it is intended to address any issue in this Plan and if it is intended to become a part of this Plan.

5.13   Retention and Preservation of Causes of Action. Unless expressly and specifically released in this Plan or through any order entered in the Bankruptcy Case, all Causes of Action, assertible by the Debtors or the Estates, are reserved and preserved under this Plan and transfer to and vest in Riot Energy or the Creditor Trust as otherwise provided for in this Plan.

5.14   Insurance. To the extent that any insurance policy or agreement related to or ancillary to an insurance policy is an Executory Contract, and notwithstanding anything contained in such contract to the contrary, all such insurance Executory Contracts are assumed and policies covering D&O Actions arising prior to the Petition Date and all rights related thereto, are assigned to the Creditor Trust, with all such other insurance Executory Contracts and rights related thereto transferred to Riot Energy as part of the Business Assets.

5.15   Widex Setoff. For the avoidance of doubt, all rights and defenses of Widex, including any alleged right to set off and recoup, any Claim Widex has, to the extent such Claim may otherwise be allowed, are fully preserved under this Plan and are not affected or otherwise modified hereby.

## ARTICLE VI.
## ACCEPTANCE OR REJECTION OF PLAN

6.1.　<u>Impairment Controversies</u>.　If a controversy arises as to whether any Class is impaired under this Plan, such Class shall be treated as specified in this Plan unless the Bankruptcy Court shall determine such controversy differently upon motion of the party challenging the characterization of a particular Class under this Plan.

6.2.　<u>Classes and Claims Entitled to Vote</u>.　Class 1 is not impaired under this Plan and is deemed to have accepted this Plan.　Classes 2, 3, and 4 are impaired under this Plan and are entitled to vote on this Plan.　Classes 5 and 6 are impaired under this Plan and receive or retain nothing under this Plan and are therefore deemed to have rejected this Plan.

## ARTICLE VII.
## TREATMENT OF DISPUTED CLAIMS AND OBJECTIONS TO CLAIMS

7.1.　<u>Objection Deadline</u>.　Any objection to a Claim when the Claim is not otherwise Allowed by this Plan must be filed by the Claims Objection Deadline or be forever barred and waived.　Any Claim that is not a Disputed Claim, Disallowed Claim, or that is not objected to by the Claims Objection Deadline shall be deemed to be an Allowed Claim of the type and priority asserted in the Claim.　Provided that a claim objection is filed prior to the Claims Objection Deadline, such objection may be amended thereafter to assert any other applicable objection or grounds for objection, together with any other relief as otherwise appropriate.　Unless arising from an Avoidance Action, any proof of Claim filed after the Effective Date shall be of no force and effect and need not be objected to.　Any Disputed Claim may be litigated to Final Order.　The Creditor Trust Trustee or Riot Energy, respectively, may compromise and settle any Disputed Claim without the necessity of any further notice or approval of the Bankruptcy Court, and Bankruptcy Rule 9019 shall not apply to any settlement of a Disputed Claim after the Effective Date.　Nothing in this Plan extends any Bar Date set in the Bankruptcy Case or grants any Creditor any greater rights with respect to a late filed Claim than such Creditor has.

7.2.　<u>Creditor Response to Objection</u>.　With respect to any objection to a Claim when such objection is filed after the Effective Date but otherwise in compliance with this Plan, the Creditor whose Claim was the subject of the objection must file with the Bankruptcy Court and serve a response to the objection upon the objecting party no later than the expiration of thirty (30) days from the date of service of any such objection.　Failure to file and serve such a response within the thirty (30) days shall cause the Bankruptcy Court to enter a default judgment against the non-responding Creditor and thereby grant the relief requested in the objection without further notice to such Creditor.　Any such objection shall contain prominent negative notice language informing the objected-to Creditor of the same.

7.3.　<u>No Waiver of Right to Object</u>.　Except as expressly provided in this Plan, nothing contained in the Disclosure Statement, this Plan, or the Confirmation Order shall waive, relinquish, release or impair any right to object to any Claim.　A Claim that is specifically Allowed in this Plan shall not be subject to any objection and shall be conclusively Allowed in the Bankruptcy Case, except to the extent that such Claim is subsequently asserted in an amount, priority, or classification otherwise than that specifically Allowed in this Plan.

7.4. <u>Miscellaneous Provisions for Disputed Claims</u>. Nothing contained in this Plan, the Disclosure Statement, or Confirmation Order shall change, waive or alter any requirement under applicable law that the holder of a Disputed Claim must file a timely proof of Claim, and the holder of such Disputed Claim who is required to file a proof of Claim and fails to do so, shall receive no distribution through the Plan and the Claim shall be discharged, unless this Plan specifically and explicitly provides otherwise. The adjudication and liquidation of Disputed Claims is a determination and adjustment of the debtor/creditor relationship and is therefore an exercise of the Bankruptcy Court's equitable power to which the legal right of trial by jury is inapplicable. The holder of any Disputed Claim shall not have a right to trial by jury before the Bankruptcy Court with respect to any such Claim, except with respect to any potential personal injury or wrongful death claim. Exclusive venue for any proceeding involving a Disputed Claim shall be in the Bankruptcy Court or District Court in the Northern District of Texas, Fort Worth Division, unless the Bankruptcy Court or District Court withdraw the reference, transfer a proceeding, or abstain. Disputed Claims shall each be determined separately, except as otherwise ordered by the Bankruptcy Court.

7.5. <u>Allowance of Disputed Claims</u>. All Disputed Claims shall be liquidated and determined as follows:

7.5.1. <u>Application of Adversary Proceeding Rules</u>. Unless otherwise ordered by the Bankruptcy Court, the proceeding involving a Disputed Claim or any objection to a Disputed Claim shall be subject to Rule 9014 of the Bankruptcy Rules. However, any party may move the Bankruptcy Court to apply the Bankruptcy Rules applicable to adversary proceedings. The Creditor Trust Trustee or Riot Energy may, at its election, make and pursue any objection to a Claim in the form of an adversary proceeding.

7.5.2. <u>Scheduling Order</u>. Unless otherwise ordered by the Bankruptcy Court, or if the objection is pursued as an adversary proceeding, a scheduling order may be entered as to each objection to a Disputed Claim upon the filing of a response thereto by the holder thereof. The Creditor Trust Trustee and Riot Energy may tender a proposed scheduling order with each objection and include a request for a scheduling conference for the entry of a scheduling order.

7.5.3. <u>Mediation</u>. The Bankruptcy Court may order the parties to mediate in connection with any objection to a Disputed Claim. The Creditor Trust Trustee and Riot Energy may include a request for mediation in its objection, and request that the Court require mediation as part of the scheduling order.

7.5.4. <u>Substantial Consummation</u>. All distributions of any kind made to any of the holders of Allowed Claims after Substantial Consummation and any and all other actions taken under this Plan after Substantial Consummation shall not be subject to relief, reversal or modification by any court unless the implementation of the Confirmation Order is stayed by an order issued under the Bankruptcy Rules.

7.6 <u>Amendments to Claims; Claims Filed After the Confirmation Date</u>. Except as otherwise provided in the Plan, and subject to the Bar Date, a Claim may not be filed with the Bankruptcy Court or amended after the Confirmation Date without the prior authorization of the Bankruptcy Court. Except as otherwise provided in the Plan, any new or amended Claim filed

with the Bankruptcy Court after the Confirmation Date shall be deemed disallowed in full and expunged without need for any action by the Debtor.

## ARTICLE VIII
## EFFECTS OF PLAN CONFIRMATION

8.1 <u>No Discharge</u>. The Debtors do not receive a discharge under this Plan.

8.2 <u>Plan Injunction</u>. Effective immediately on the Effective Date, and without need for further order, document, action, or instrument, the Confirmation Order shall, and shall be deemed to, permanently enjoin all Persons from taking any of the following actions on account of any Claim: (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind against the Debtors or the Estates or any of their property, or against Riot Energy or its property, on account of a Claim or Debt that is treated under this Plan, except solely as permitted under this Plan; (ii) enforcing, levying, attaching, collecting, or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree, or order against the Debtors or the Estates or their property, or against Riot Energy or its property, on account of a Claim or Debt that is treated under this Plan, except solely as permitted under this Plan; (iii) creating, perfecting or enforcing in any manner directly or indirectly, any lien, charge or encumbrance of any kind against the Debtors or the Estates or their property, or against Riot Energy or its property, on account of a Claim, interest, lien, or Debt that is treated under this Plan, except solely as permitted under this Plan; and (iv) proceeding in any manner in any place whatsoever against the Debtors or the Estates or their property, or against Riot Energy or its property, with respect to any property to be distributed or transferred under the Plan or Claim that is subject to this Plan, in any way that does not conform to, or comply, or is inconsistent with, the provisions of this Plan; *provided*, *however*, that such injunction shall not preclude any party in interest from seeking to enforce or interpret the terms of the Plan through an action commenced in the Bankruptcy Court or other appropriate court, from appealing the Confirmation Order, or from filing a continuation statement to continue in effect a perfected security interest that survives the Effective Date.

8.3 <u>No Liability for Solicitation or Participation</u>. Pursuant to section 1125(e) of the Bankruptcy Code, Persons that solicit acceptances or rejections of this Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, shall not be liable, on account of such solicitation or participation, for violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan.

8.4 <u>Exculpation</u>. Except as specifically provided for herein, on and after the Effective Date, and without the need for further action, the Plan and Confirmation Order shall constitute a release and discharge of all actions, causes of action, claims, suits, debts, damages, judgments, liabilities, and demands whatsoever, whether matured or unmatured, whether at law or in equity, whether before a local, state, or federal court, state or federal administrative agency or commission, regardless of location and whether now known or unknown, liquidated or unliquidated, that the Debtors or the Estates may have or be able to assert against: (i) any member of the board, officer, or manager of the Debtors; (ii) Munsch Hardt Kopf & Harr, P.C., its attorneys, employees, officers, agents, and shareholders; and (iii) Riot Energy, its attorneys, employees, officers, agents, and shareholders, solely for any actions or inactions taken by any of the foregoing in, or arising against the foregoing as a result of, the Bankruptcy Case, the Disclosure Statement, or the Plan,

including with respect to the negotiation, execution, and delivery of any document or instrument in connection with the Plan; *provided, however,* that nothing in this Plan releases any claim against any of the foregoing for gross negligence or intentional act. For the avoidance of doubt, the foregoing does not affect or prejudice any claim or cause of action arising prior to the Petition Date.

**ARTICLE IX**
**CONDITIONS PRECEDENT**

9.1.    <u>Conditions Precedent to Confirmation and Effectiveness of Plan</u>.  The Plan shall not become effective until the following conditions shall have been satisfied: (i) the Confirmation Order shall have been entered, in form and substance acceptable to the Debtors and Riot Energy; (ii) on the fifteenth (15th) day after the Confirmation Date, no notice of appeal of the Confirmation Order shall have been filed or, if filed, no order staying the Confirmation Order shall have been entered by such date; (iii) the Debtors shall have satisfied all conditions to closing set forth in the Riot Energy APA; (iv) the Creditor Trust Trustee shall have negotiated and executed the Creditor Trust Agreement; (v) all other specific condition precedents contained in this Plan shall have been satisfied; and (vi) a notice of the Effective Date shall have been filed by the Debtor in the Bankruptcy Case.

9.2.    <u>Non-Occurrence of the Effective Date</u>.  If the Plan is confirmed but the Effective Date does not occur by April 16, 2021, unless such date is extended by the Debtors and Riot Energy: (i) the Confirmation Order shall be deemed vacated; (ii) all bar dates and deadlines established by the Plan or the Confirmation Order shall be deemed vacated; (iii) the Bankruptcy Case will continue as if confirmation of this Plan had not occurred; and (iv) this Plan will be of no further force and effect, with the result that the Debtors and other parties-in-interest will be returned to the same position as if confirmation had not occurred. The failure of the Effective Date to occur shall not affect the validity of any order entered in the Bankruptcy Case other than the Confirmation Order or any order based thereon.

9.3.    <u>Notice of the Effective Date</u>.  On or before three (3) Business Days after occurrence of the Effective Date, the Debtors shall mail to all Persons served with a copy of the Disclosure Statement a notice that informs such Persons of: (i) the occurrence of the Effective Date; (ii) the deadlines established under this Plan for the filing of Administrative Claims, Professional Claims, objections to Claims, and any other pertinent deadlines; (iii) the procedures for requesting notice; (iv) the procedures for changing an address of record; and (v) such other matters as they deem to be appropriate.

9.4.    <u>Modification of this Plan</u>.  The Debtors may alter, amend or modify this Plan under section 1127 of the Bankruptcy Code or as otherwise permitted by applicable law at any time prior to the Confirmation Date.  After the Confirmation Date and prior to the Substantial Consummation of this Plan, the Debtors or any party in interest in the Bankruptcy Case may, so long as the treatment of holders of Claims under this Plan and so long as the protections under this Plan are not materially adversely affected, institute proceedings in the Bankruptcy Court to remedy any defect or omission or to reconcile any inconsistencies in this Plan, the Disclosure Statement or the Confirmation Order, and any other matters as may be necessary to carry out the purposes and effects of this Plan.

9.5. <u>Revocation or Withdrawal of this Plan</u>. The Debtors reserve the right to revoke or withdraw this Plan at any time prior to the Confirmation Date. If the Debtors revoke or withdraw this Plan prior to the Confirmation Date, this Plan shall be deemed null and void. In such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtors or any other Person or to prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors.

9.6 <u>Inadmissible Settlement Offer</u>. If the Effective Date does not occur as otherwise provided for in this Plan, the Plan shall be treated as a settlement offer under Federal Rule of Evidence 408 and shall not be used as evidence to prove any alleged liability of the Debtors or Riot Energy.

## ARTICLE X
## <u>RETENTION OF JURISDICTION AND CLAIMS</u>

10.1. <u>Jurisdiction of Bankruptcy Court</u>. Following the Effective Date, and notwithstanding the entry of the Confirmation Order, the Bankruptcy Court (including, as appropriate, any District Court with jurisdiction over the Bankruptcy Court) shall retain jurisdiction of the Bankruptcy Case and all matters arising in, or related to, the Bankruptcy Case to the fullest extent permitted by law, including jurisdiction to:

10.1.1. To hear and determine motions, applications, adversary proceedings, and contested matters pending or commenced after the Effective Date;

10.1.2. To hear and determine objections (whether filed before or after the Effective Date) to, or requests for estimation of, any Claim, and to enter any order requiring the filing of proof of any Claim before a particular date;

10.1.3. To ensure that distributions to holders of Allowed Claims are accomplished as provided in the Plan;

10.1.4. To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

10.1.5. To construe and to take any action to enforce this Plan and the Confirmation Order;

10.1.6. To issue such orders as may be necessary for the implementation, execution and consummation of this Plan, including the enforcement of any release and/or injunction in this Plan, and to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan and the Confirmation Order, and to protect Riot Energy and its property from any action or threatened action taken in violation of any provision of this Plan;

10.1.7. To hear and determine any applications to modify this Plan, to cure any defect or omission or to reconcile any inconsistency in this Plan, the Disclosure Statement or in any order of the Bankruptcy Court including, without limitation, the Confirmation Order;

10.1.8.     To hear and determine all applications for Administrative Claims;

10.1.9.     To hear and determine other issues presented or arising under this Plan, including disputes among holders of Claims and arising under agreements, documents or instruments executed in connection with this Plan;

10.1.10.     To determine such other matters and for such other purposes as may be provided in the Confirmation Order;

10.1.11.     To hear and determine any other matters related hereto and not inconsistent with Chapter 11 of the Bankruptcy Code;

10.1.12     To hear, authorize, and order the sale, free and clear of liens, claims, interests, and encumbrances, of any property;

10.1.13.     To enter the Final Decree upon proper request;

10.1.14.     To command and enjoin any Creditor or Person to comply with the transfer and vesting of property of the Debtors and the Estates free and clear of liens, claims, interests, and encumbrances, as provided for in this Plan, and to command any Creditor or Person to release any lien or security interest required to be released or released by this Plan, or to order that any other Person may do to the same with the same full force and effect;

10.1.15.     To hear and determine any action concerning the recovery and liquidation of assets, wherever located, including without limitation litigation to liquidate and recover assets that consist of claims, rights and causes of action against third parties and actions seeking declaratory relief with respect to issues relating to or affecting assets; and to hear and determine any action concerning the determination of taxes, tax refunds, tax attributes, and tax benefits and similar or related matters with respect to the Debtors or the Estates, including, without limitation, matters concerning federal, state, local and other taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

10.1.16     To hear and determine any Avoidance Actions;

10.1.17     To hear and determine all matters affecting the governance, administration, identity, replacement, compensation, and other internal matters of the Creditor Trust and the Creditor Trust Trustee; and

10.1.18     To adjudicate, try, and liquidate all Causes of Action transferred to the Creditor Trust, and to otherwise assist the Creditor Trust with monetizing its assets and collecting on all of its Causes of Action.

10.2.     <u>Failure of Bankruptcy Court to Exercise Jurisdiction</u>.  If the Bankruptcy Court abstains from exercising or declines to exercise jurisdiction, or is otherwise without jurisdiction, over any matter arising under, arising in or related to the Bankruptcy Case, including with respect to the matters set forth above in Plan, this Article shall not prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such subject matter.

10.3. <u>No Creation of Jurisdiction</u>. This Plan does not create jurisdiction in the Bankruptcy Court but only retains the Bankruptcy Court's jurisdiction as it otherwise exists. For the avoidance of doubt, where the Bankruptcy Court has no jurisdiction, or has lost jurisdiction through abstention, remand, withdrawal of the reference, or otherwise, this Plan does not purport to create or reinstate said jurisdiction; *provided, however*, that this Plan, while not creating or reinstating such jurisdiction, does not prejudice or limit the ability of the Bankruptcy Court to otherwise exercise such jurisdiction as may otherwise be conferred or reinstated.

10.4. <u>Retention and Preservation of General Rights</u>. Notwithstanding the confirmation of the Plan and the entry of the Confirmation Order, and notwithstanding any principle of *res judicata* or otherwise, and unless specifically and explicitly released, waived, compromised, or otherwise treated in this Plan, the Debtors and the Estates retain any and all rights, property, and interests, regardless of whether they are scheduled, filed, or asserted prior to the Confirmation Hearing, including, without limitation, all: (i) defenses to Claims; (ii) affirmative defenses to Claims; (iii) setoffs and recoupments against any Claim, Creditor, or other person; (iv) rights to turnover, accounting contribution, indemnification, or reimbursement against any Creditor or other person; (v) rights under any loan document modified by this Plan, but only as so modified; (vi) rights to any tax refund belonging to the Debtors; and (vii) claims and causes of action against any Creditor or person whatsoever, including for affirmative relief and to reduce any liability.

10.5 <u>Retention and Preservation of Specific Rights</u>. Without limiting the effectiveness or generality of the foregoing, and unless expressly and specifically waived or released in this Plan or through any order entered in the Bankruptcy Case, and out of an abundance of caution, the Debtors and the Estates specifically reserve and retain the following claims and causes of action, which shall in no way be extinguished, released, or prejudices as a result of the confirmation of this Plan, and which are transferred to the Creditor Trust or to Riot Energy as otherwise provided for in this Plan:

(i)     the Avoidance Actions;

(ii)    the Causes of Action, and all other claims and causes of action of the Debtors or the Estates, whether known or unknown, scheduled or unscheduled, asserted or unasserted;

(iii)   claims and causes of action against Oticon and its affiliates and subsidiaries for its failure to purchase approximately $660,000 in doors it promised to pay, a promise on which the Debtor priced cells that Oticon did purchase for less per cell than it would have had without the door purchase promise (which matter the Debtor continues to negotiate with Oticon and believes it will resolve (all such claims against Oticon are Business Assets to be transferred to Riot Energy under this Plan));

(iv)    the Widex Actions;

(v)     the D&O Actions;

(vi)    the D&O Insurance Actions;

(vii)     all objections to Professional Claims and rights to disgorge or recover any prepetition or postpetition payment to any professional; and

(viii)    all rights against any holder of taxes, whether for past, present, or future taxes, including any right for purposes of future valuations, assessments, and taxes, arising under or related to section 505 of the Bankruptcy Code.

**ARTICLE XI**
**MISCELLANEOUS PROVISIONS**

11.1.    <u>Payment of Statutory Fees</u>.  All fees payable pursuant to section 1930 of Title 28 of the United States Code arising prior to the Effective Date, shall be timely paid by Riot Energy, subject to the rights of Riot Energy to contest the same.

11.2.    <u>Exercise of Liens</u>.  Any lien preserved or granted in this Plan shall, when permitted to be exercised by this Plan and applicable law, be exercised, enforced, and foreclosed in full and strict conformity with all applicable non-bankruptcy law and agreements, except to the extent specifically modified or preempted in this Plan.

11.3.    <u>No Admissions</u>.  Notwithstanding anything herein to the contrary, nothing contained in this Plan shall be deemed an admission by the Debtors with respect to any matter set forth herein including, without limitation, liability of any person on any Claim or the propriety of any classification of any Claim.

11.4.    <u>Plan Controls</u>. To the extent there is an inconsistency or ambiguity between any term or provision contained in the Disclosure Statement and the Plan, the terms and provisions of the Plan shall control.

11.5.    <u>Governing Law</u>.  Except to the extent the Bankruptcy Code, the Bankruptcy Rules or other federal or state laws are applicable, or any prepetition contract provides for the application of the law of a different state, the laws of the State of Texas shall govern the construction, implementation and enforcement of this Plan and all rights and obligations arising under this Plan, without giving effect to the principles of conflicts of law.

11.6.    <u>Substantial Consummation of Plan</u>.  The Plan shall be deemed to be substantially consummated upon the date of Substantial Consummation.

11.7.    <u>Successors and Assigns</u>.  The rights, benefits and obligations of any Person named or referred to in this Plan will be binding upon, and will inure to the benefit of, the heir, executor, administrator, representative, successor, or assign of such Person.

11.8.    <u>Severability</u>.    Should the Bankruptcy Court determine, on or prior to the Confirmation Date, that any provision of this Plan is either illegal or unenforceable on its face or illegal or unenforceable as applied to any Claim or Person, the Debtors may, in their discretion, alter, delete, or modify such provision to make it valid and enforceable to the maximum extent practicable consistent with the original purpose of such provision.  Notwithstanding any such determination, interpretation, or alteration, the remainder of the terms and provisions of this Plan

shall remain in full force and effect, provided that the Bankruptcy Court otherwise confirms the Plan.

11.9. <u>Notices and Distributions</u>. On and after the Effective Date, all notices, requests and distributions to a holder of a Claim shall be sent to the last known address of: (i) the holder or its attorney of record as reflected in the holder's proof of Claim or Administrative Claim filed by or on behalf of such holder; or (ii) if there is no such evidence of a last known address, to the last known address of the holder according to the books and records of the Debtors. Any holder of a Claim may designate another address for the purposes of this section by providing the Creditor Trust Trustee written notice of such address, which notice will be effective upon receipt as otherwise appropriate.

11.10. <u>Unclaimed Property</u>. If any property to be distributed on account of this Plan remains unclaimed for a period of one (1) year after it has been delivered (or delivery has been attempted) or has otherwise been made available, such unclaimed property shall be forfeited by the Person entitled to receive the property and the unclaimed property and the right to receive it shall revert to and vest in the Creditor Trust or Riot Energy as appropriate.

11.11. <u>Binding Effect</u>. The Plan shall be binding on and inure to the benefit of the holders of Claims and Equity Interests (whether or not they have accepted the Plan) and their respective personal representatives, successors and assigns, and all parties-in-interest, as provided for by the Bankruptcy Code.

11.12. <u>Withholding and Reporting</u>. In connection with this Plan and all instruments issued in connection therewith and distributions thereon, the Debtors and Creditor Trust Trustee shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority and all distributions hereunder shall, to the extent applicable, be subject to any such withholding and reporting requirements.

## ARTICLE XII
## <u>CONFIRMATION REQUEST</u>

The Debtors hereby requests confirmation of this Plan pursuant to section 1129(a) of the Bankruptcy Code or, if this Plan is not accepted by each of those Classes of Claims entitled to vote, section 1129(b) of the Bankruptcy Code.

DATED: MARCH 5, 2021.

**MUNSCH HARDT KOPF & HARR, P.C.**

By: /s/ Davor Rukavina
     Davor Rukavina, Esq.
     Texas Bar No. 24030781
     Julian P. Vasek, Esq.
     Texas Bar No. 24070790
     3800 Ross Tower
     500 N. Akard Street
     Dallas, Texas 75201-6659
     Telephone: (214) 855-7500
     Facsimile: (214) 855-7584

**ATTORNEYS FOR THE
DEBTORS-IN-POSSESSION**